H. B. TAYLOR, JR., Plaintiff-Respondent

v.

V. P. BOURNE–VANNECK, Appellant

No. 14,144

United States Court of Appeals

Third Circuit

Argued January 28, 1964

Decided March 5, 1964

*See, also, 328 F.2d 697*

DAVID E. MAAS, St. Thomas, Virgin Islands, *for appellant*

GEORGE H. T. DUDLEY, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, STALEY and ALDRICH,* *Circuit Judges*

ALDRICH, *Circuit Judge*

This is an action for fraud, in two counts. Amplifying the pleading somewhat, plaintiff alleged in the first count that in November 1958 defendant agreed to convey to him, for $5,000 which plaintiff paid, one half of defendant's 50% stock interest in a shoelace factory which defendant was establishing in Charlotte Amalie, Virgin Islands, which stock defendant had allegedly acquired by contributing to the company $10,000 in machinery and materials, but that defendant did not then own said stock and had not contributed such value. In the second count plaintiff asserted that the defendant had induced him to advance $5,000 to engage in a night club venture in Charlotte Amalie, in return for a quarter interest in the enterprise, upon the false representation that the defendant had made an equivalent investment therein. There followed allegations of siphoning off assets for defendant's personal purposes, and the failure of both businesses. The court, sitting without jury, made findings in plaintiff's favor and entered judgment in the amount of $10,350. Defendant appeals.

■ The evidence consisted of about 90% color and 10% proof. Nor are we impressed with materiality of the proof insofar as it related to the title to the stock. Plaintiff did, in due course, receive 25% of the stock of the company. That it was not defendant's stock, but stock originally expected to be issued to another, but who failed to pay for it, so that defendant, when he acquired his 50% stock interest, retained it intact, seems to us a distinction that caused no possible financial difference to the plaintiff. However, the evidence well warranted the finding that the defendant had substantially misrepresented the value of his tangible conveyances to the company, to the detriment of the com-

* Sitting by designation.

pany and to plaintiff's investment therein, which became a total loss. We see no problem with respect to the first cause of action.

■ Plaintiff's investment in the night club also became a total loss. It is less clear that this was because of defendant's failure to match plaintiff's financing, but we cannot say that the court's causation finding was plainly wrong. The more difficult question is whether defendant represented that he himself was matching plaintiff by contributing $5,000. It is conceded that he did not do so in positive terms, but plaintiff testified that he "assumed" this from certain letters defendant sent to him. Our inquiry, in the light of the court's findings, is whether this interpretation of the letters was warranted.

In his first letter defendant stated, after dwelling upon the alleged glorious prospects of the night club and the desirable lease hopefully to be made.

"George estimates the total costs would amount to $15,000.00. If you are interested and can handle it, for a loan* of $5,000.00 you can have 25% of the whole proposition."

Then, after speaking of another interested party, (with more money), defendant added that he and "George" preferred plaintiff as a partner, and "we require just $5,000.00 from you." In the follow-up letter defendant repeated that all they needed was "$5,000 additional, . . . that much additional cash to our own." (Later plaintiff advanced another $350.)

On this we think plaintiff was justified in concluding that defendant and George were each contributing $5,000 in cash (which, in fact, neither did). In judging the reasonable effect of the letters upon the plaintiff it is to be borne in mind that plaintiff had previously parted with $5,000 with a minimum of inquiry and investigation. De-

---

* We assume that the transaction in fact intended was a purchase of an interest in the business, and not a "loan," but if it was strictly a loan the defendant's case is scarcely advanced.

fendant could have, to put it politely, sized plaintiff up as a mark and taken his measure. Not everyone has to be knocked out to be robbed. A fair test of the intendment of the letters would be to consider whether plaintiff would have made the payment if defendant had written, "We need $15,000 capital to start this operation, but if you will let us have $5,000 we will give you a quarter interest and try to get by without the rest." We think even plaintiff would have balked over so unattractive a proposition.

We also believe it fair to examine the defendant's state of mind, if only for reassurance that interpreting the correspondence against him would not be doing an injustice, by reference to another part thereof. In his first solicitation defendant wrote that part of the night club building could be converted into two apartments and rented for enough so that the night club would be "rent free." Yet contemporaneously defendant was writing the prospective lessor that the "two apartments . . . [are] for personal occupancy by the families of George Ward ["George"] and myself." In the light of the other evidence of defendant's behavior we doubt that he and George were going to pay rent. In any event, this intramural plan was not the picture given the plaintiff. On the record as a whole it does not offend us to support the district court's conclusion that plaintiff was deliberately bilked.

The judgment will be affirmed.